Filed 4/23/21  In re L.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | B307693<br><br>(Los Angeles County Super. Ct. No. 20CCJP00664) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>EVELYN D.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Affirmed, in part; dismissed, in part.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

Lori N. Siegel, under appointment by the Court of Appeal, for Minor and Respondent.

_____

Evelyn D. (mother) appeals two of four jurisdictional findings under Welfare and Institutions Code section 300, subdivisions (b)(1) and (c),[1] and a disposition order requiring therapeutic visitation with her son L.C. (minor). The Los Angeles County Department of Children and Family Services (Department) and minor both contend that mother's appeal of the jurisdictional findings is not justiciable, and that the visitation orders are within the court's discretion. We decline to review the portion of mother's appeal challenging the juvenile court's jurisdictional findings, and we affirm the court's order for therapeutic visitation.

---

[1] Further statutory references are to the Welfare and Institutions Code unless stated otherwise.

2

# FACTUAL AND PROCEDURAL BACKGROUND[2]

*Family background and early dependency history*

Minor (born January 2007) is mother's youngest child. His two older sisters, D.D. and M.G., live in Texas with maternal grandmother.[3]  In late 2007 and early 2008, the Department substantiated physical abuse by mother against M.G., and found minor to be at risk of abuse.  A voluntary family maintenance case was opened in Los Angeles for D.D. and minor, with a separate voluntary case in Riverside County for M.G., who was being cared for by her paternal relatives.  In Los Angeles, D.D. and minor were initially detained and placed with maternal grandmother, but the case was ultimately closed due to loss of contact with the family.

In early January 2012, a caller reported that minor was likely traumatized and urinating on himself because mother hit him, yelled at him, and called him vulgar names on a daily basis.  Mother had a family reunification case until April 2012, and then a family maintenance case until

---

[2] For the present summary, consistent with the substantial evidence standard of review, "we state the facts in the manner most favorable to the dependency court's order."  (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

[3] The two sisters are not parties in the juvenile case. Minor does not know the identity of his father.

December 2012, but during the same time frame, an interim review report stated that mother fled from California to Texas without notifying anyone and to avoid investigation. Ultimately, mother partially complied with reunification services, and the Department declined to re-file the case, finding no child safety risks.

Additional referrals in 2013 and 2014, based on mother screaming and yelling profanities at the children and using drugs, were closed because the family's whereabouts were unknown.

*Referral and initial investigation*

The most recent referral involving mother came to the Department in late January 2020, regarding allegations of caretaker absence and general neglect, because mother would leave the child with others with no plan and no way to contact her. Mother had been leaving minor with a friend (T.G.) and the friend's sister (L.G.). L.G. had agreed to allow mother and minor to stay with them while mother looked for a job and housing in August 2019. Mother would leave minor for three or four days at a time without a plan and without notifying L.G. In September, L.G. told mother she needed to move out, but agreed to mother's request to stay an additional month. Mother left minor at the home again, and L.G. was unable to contact mother until December 2019. Mother did not respond to calls or texts from L.G. asking mother to pick minor up. Mother only reappeared after L.G.

told mother she planned to seek custody of minor. Mother took minor, but then on January 13, 2020, mother dropped minor off at school and called T.G. to pick him up. Mother was in jail for three days, but did not contact minor or his caregivers after being released on January 28, 2020.

A Department social worker interviewed minor at school on January 30, 2020. Minor reported that he had been living with his "tias" since August 2019, and could not recall the last time he saw or spoke to his mother. He did not know where she was. He gave the social worker the last phone number he had for mother, adding that she changes her phone number frequently.

The social worker was able to reach mother at the phone number minor provided, but mother said she was leaving and would call once she reached her destination. When the social worker tried to get more detail, mother hung up. Shortly thereafter, the social worker learned that mother had gone to L.G.'s home and she was upset that the Department was involved. The social worker arrived at the home and outside saw a woman who refused to identify herself. The social worker went into the home and spoke with T.G. and minor. T.G. stated that she was getting texts from mother telling her to not speak to the social worker and not to confirm that mother was standing outside the home. According to T.G., minor was in the home and was crying because he did not want to go with mother. Minor confirmed he did not want to go with his mother, and when the social worker asked if he felt safe with mother, he said "not really."

When asked to expand on his feelings, he said "something bad might happen" and "I don't feel like going." When asked if something bad had happened in the past and why he felt something bad might happen if he went with mother now, minor replied "I don't know." Minor denied being afraid of mother and said she did not curse at him or physically discipline him. He did not feel safe with mother because she might leave him alone, as she did so many times when he was little.

*Removal and Detention*

Minor was removed by the Department on January 30, 2020, and placed in a foster home. At the February 4, 2020 detention hearing, the court denied mother's oral demurrer to the petition. It found a prima facie case for minor's detention and ordered drug testing for mother and individual and conjoint counseling for minor, as well as monitored visits. At minor's request, minor only appeared in court after mother had left, because he wanted to see the judge and participate, but did not want to see mother.

*Jurisdiction and disposition report*

During a February 28, 2020 interview, minor answered the dependency investigator's questions about the time that he spent with L.G., explaining that he and mother had come from Texas to California, and he had been staying with the

6

G.s since either April or August of 2019. Mother had not made a plan, and had left him with the G.s, and "didn't come back until next year." L.G. would buy him food, but mother did not. Minor also reported that when either he or L.G. tried to reach mother by phone, mother did not answer. When the investigator asked whether mother hit minor, minor said mother hit him in the arm or in the head with an open hand or a sandal; he nodded affirmatively when asked whether it left marks or bruises and whether it hurt. The investigator also asked whether mother ever called him names. Minor said mother would say "bitch" and "fuck" and it would make him feel mad.

The investigator also interviewed mother, who was agitated, but after initially insisting that she was living at the home with minor and L.G., admitted she left minor with L.G. and T.G. around August and did not see him again until December. When the investigator asked mother if she ever gave the child or L.G. money or groceries, mother accused the G.s of brainwashing minor, saying they did not want mother to give them money or food "[b]ecause they so called got it." Mother continued "I don't even know why they are saying that! Fucken bitches! I'm getting a place next month." Mother was not employed, and when asked how she would provide for minor, she said "My man . . . is coming out of jail and he's going to support me. He's gonna get out soon." Mother had not had any visits with minor because minor did not want to visit or speak with her.

The caregiver reported that minor disclosed to her that his mother used to hit him, call him names, and leave him with strangers for weeks. Minor had also displayed anger issues at school in February 2020, and was twice suspended, once for hitting another child in the neck with a chair.

*Adjudication hearing*

Following continuances to locate minor's alleged fathers and the filing of a second amended petition, the court heard argument from all parties. Mother argued the petition allegations were legally insufficient and evidence of minor's refusal to go with mother was not grounds for dependency jurisdiction. Addressing the proposed case plan, mother objected to the proposed orders of removal, drug program, conjoint counseling, individual counseling, and therapeutic visits.

The court found true the allegations for counts b-1 (inappropriate plan), b-2 (physical abuse), b-5 (drug and alcohol abuse), and c-1 (emotional abuse). The court dismissed counts b-3, b-4, and b-6 (mother's and alleged fathers' criminal histories). The court ordered minor removed from parental custody, with mother to participate in reunification services, including individual counseling, conjoint counseling if recommended by the therapist, and parenting classes. Visits were to be monitored, in a therapeutic environment, based on mother's inappropriate behavior during meetings with the Department.

# DISCUSSION

*Mother's appeal of the emotional and physical abuse findings is not justiciable*

In her appeal, mother does not challenge the juvenile court's decision to sustain petition allegations under section 300, subdivision (b), based on mother's failure to make a plan for minor's care (count b-1) or drug abuse (count b-5). She asks this court to exercise its discretion and reach the merits of her challenge to the sustained counts based on physical abuse (count b-2) and emotional abuse (count c-1) because those counts shaped the court's case plan. We conclude appellate review of the challenged counts is not warranted.

"As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W.*); accord, *In re I.J.* (2013) 56 Cal.4th 766, 773.) Some courts have nevertheless exercised their discretion to review a juvenile court finding that is not essential for jurisdiction over a dependent child when the challenged finding "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction'

[citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763 (*Drake M.*).)

On the facts here, we see no reason to exercise our discretion to review the emotional and physical abuse jurisdictional findings against mother. Mother's only argument in support of seeking appellate review of these findings is that they "could be prejudicial in a future custody proceeding." She does not, however, provide any additional detail or explanation about the potential prejudice, and we see no evidence of a potential custody dispute. (Compare *In re D.P.* (2014) 225 Cal.App.4th 898, 902 [potential prejudice where mother shared joint custody of child with father]). Insofar as Mother contends the findings prejudiced her with respect to the court's visitation order, we discuss that claim in the following section.

*Disposition order for therapeutic visitation*

"Visitation orders in dependency cases are typically reviewed for abuse of discretion and will not be reversed absent a 'clear showing of abuse of discretion.' [Citation.]" (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119.) A juvenile court has broad discretion to fashion disposition orders that will best serve and protect the child's interests. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*Briana V.*).) The question is whether a rational fact-finder could conclude that the order was designed to advance the child's best interests. (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186–187.)

10

Moreover, in crafting a disposition order, the court is not limited to addressing problems described in the sustained petition. (See *Briana V., supra,* at p. 311; see also *In re K.T.* (2020) 49 Cal.App.5th 20, 25 [a court may "formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings"].)

Mother's long history of dependency investigations and concerns about physical abuse against minor and his older sisters dates back to minor's infancy. In early 2012, when minor was almost five years old, a caller reported the mother would hit minor, direct pointed insults at him, and call him vulgar names. In 2013, a caller voiced concern that minor was so traumatized he was urinating on himself while mother was yelling profanities at him and insulting him. In 2014, a caller reported that the children looked traumatized and scared, and mother yelled at them and called them names. Each of these prior investigations was closed after the Department was not able to locate the family.

In his initial interview with the social worker in January 2020, minor could not recall the last time he had seen or spoken to mother. In a later interview in February 2020, when asked how he could contact mother if there was an emergency or he needed something, he stated that he and L.G. called mother and mother did not answer.

Even ignoring the allegations of physical and emotional abuse that mother has challenged, there is ample support for

the court's decision to grant minor's request for therapeutic visitation. The court's wide discretion in fashioning visitation orders permits it to take into account mother's history of attempting to evade investigation and the details of earlier referrals, as well as the facts of this case and minor's own request that visitation take place in a therapeutic environment. We find no error.

## DISPOSITION

Mother's appeal of the juvenile court's jurisdictional findings is dismissed. The court's dispositional orders are affirmed.

MOOR, J.

We concur:

RUBIN, P.J.

BAKER, J.